FILED

_____O'clock & _____min    M

APR 2 7 2007

United States Bankruptcy Court
Columbia, South Carolina (6)

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | Case No. 06-00576-jw |
| Patrick Andre Grisard-Van Roey, | Chapter 7 |
| Debtor. | |
| Patrick Andre Grisard-Van Roey, | Adv. Pro. No. 06-80178-jw |
| Plaintiff, | **ORDER** |
| v. | |
| Auto Credit Center, Inc., | |
| Defendant. | |

ENTERED

APR 2 7 2007

J.G.S.

This matter comes before the Court upon the Motion for Partial Summary Judgment

filed by Defendant, Auto Credit Center, Inc. ("Auto Credit"), and the Motion for Summary

Judgment and Memorandum Opposing Defendant's Motion for Summary Judgment filed by

Plaintiff, Patrick Andre Grisard-Van Roey ("Debtor").[1] The Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(C).  Pursuant to Fed. R. Civ. P. 52, made

applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following

Findings of Fact and Conclusions of Law:[2]

### FINDINGS OF FACT

1.      On June 29, 2005, Debtor and Auto Credit entered into a retail installment contract

(the "Contract") for the sale of a pre-owned 2003 Mitsubishi Galant automobile (the

"Vehicle").

---

[1]      Debtor's Motion for Summary Judgment is addressed by separate order of the Court.
[2]      To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as
such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

2.    As a condition for receiving financing from Auto Credit, Debtor agreed to the installation of a Passtime Payment Assurance System ("Passtime System") in the Vehicle. The Passtime System operates to shut down the Vehicle if a payment is missed and also apparently serves as an anti-theft device for both Debtor and Auto Credit. The Vehicle will be disabled following the passage of a designated period of time unless a new code is timely entered. Auto Credit provides the new code to the owner of the vehicle only after receiving the monthly payment.

3.    On June 29, 2005, Auto Credit installed the Passtime System in the Vehicle. On June 30, 2005, Debtor signed a Statement of Disclosure and Authorization to Install a Passtime Protection System (the "Disclosure Statement"). Debtor acknowledged in the Disclosure Statement that he had been provided with a minimum of one emergency code good for twenty-four hours of operation of the Vehicle per code and a 24-hour hotline number to obtain additional emergency codes or have someone dispatched to assist him in the case of an emergency.

4.    On June 30, 2005, the transaction for the purchase of the Vehicle was completed and Debtor and Auto Credit signed an Affidavit and Notification of Sale of Motor Vehicle.

5.    Under the terms of the Contract, Debtor was required to make bi-monthly payments of $344.66 to Auto Credit.

6.    On January 17, 2006, following Debtor's failure to timely make a scheduled payment, Auto Credit sent a Notice of Right to Cure (the "Notice Letter") via certified mail, return receipt requested, which was received by Debtor on January 27, 2006.

7.    Subsequent to receiving the Notice Letter, Debtor timely cured his default.

8.    On February 15, 2006, Debtor filed for relief under Chapter 13 of the Bankruptcy

Code.[3] Auto Credit was notified of Debtor's bankruptcy filing and was provided notice of the First Meeting of Creditors.

9.      On February 16, 2006, Debtor filed his Chapter 13 plan, which called for monthly payments to be made to Auto Credit.

10.     Debtor's Chapter 13 plan was confirmed on March 23, 2006. Upon confirmation of the Plan, the payments became due monthly and the Passtime System was adjusted to provide for monthly, rather than bi-monthly, codes. Additionally, at Debtor's request, Auto Credit disabled the advance warning feature of the Passtime System so that it would no longer emit a warning beep prior to disabling the Vehicle.

11.     Debtor made several payments under the Plan. After the May payment, a code was provided that was set to expire at the end of June and disable the vehicle on July 4, 2006 if Debtor did not enter a new code.

12.     Debtor failed to make his June payment. Accordingly, he did not receive a new code and the vehicle was disabled by the Passtime System on July 4, 2006. The office of Auto Credit was closed for the Independence Day holiday, thus Debtor was unable to contact Auto Credit to request a new code.

13.     On July 5, 2006, Debtor requested a longer term code, which Auto Credit provided. The code provided was set to expire at the end of August 2006.

14.     On July 10, 2006, Auto Credit received a letter from Debtor demanding that the Passtime System either be extended for a longer period of time or disabled completely and removed. In response, Auto Credit forwarded via facsimile a new code to Debtor's attorney, which was set to expire at the end of September. The notice of the new code provided that the new code would need to be entered into the Vehicle within twelve hours of authorization to

---

[3]      "Bankruptcy Code," as used herein, refers to 11 U.S.C. § 101 *et seq.*

activate the code. It appears that the new code was not timely or properly entered. As a result, the code entered on or about July 5, 2006 remained in effect.

15.    On September 1, 2006, the Passtime System disabled the vehicle.

16.    On November 7, 2006, the Court entered a Scheduling Order that provided that the deadline for motions for summary judgment was January 16, 2007. The deadline for objections to any motions was January 19, 2007.

17.    On January 16, 2007, Auto Credit filed its Motion for Partial Summary Judgment and the supporting affidavit of Charles Michael Bensch.

18.    On January 23, 2007, Debtor filed his Motion for Summary Judgment and Memorandum in Opposition to Auto Credit's Motion for Partial Summary Judgment.[4] Debtor filed no affidavits supporting his Motion for Summary Judgment or opposing Auto Credit's Motion for Partial Summary Judgment.

## CONCLUSIONS OF LAW

Pursuant to Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." When a motion for summary judgment is filed, the Court does not weigh the evidence, but determines if there is a genuine issue for trial. Listak v. Centennial Life Ins. Co., 977 F. Supp. 739, 743 (D.S.C. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[4] On January 26, 2007, Auto Credit filed a Motion to Dismiss seeking to dismiss Debtor's Motion for Summary Judgment on the grounds that it was untimely. Although styled as a "Motion to Dismiss," the Court believes this document should be treated as an objection to Debtor's Motion for Summary Judgment. The Court finds that Debtor's Motion for Summary Judgment and Memorandum in Opposition to Auto Credit's Motion for Summary Judgment was not timely filed, but further finds that the granting of Auto Credit's Motion for Summary Judgment by this Order moots Auto Credit's Motion to Dismiss.

242, 249, 106 S. Ct. 2505 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003), cert. denied, 541 U.S. 1042 (2004). Upon making this showing, the burden shifts to the non-moving party to go beyond the pleadings and set forth affidavits, depositions, answers to interrogatories or admissions demonstrating that a genuine issue exists for trial. Fed. R. Civ. P. 56(e); Campbell v. Capital One Bank (In re Broughton), No. 99-06953-W, Adv. Pro. No. 00-80143, slip op. at 4 (Bankr. D.S.C. Mar. 20, 2001). "If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial." Listak, 977 F. Supp. at 743 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986)).

Auto Credit seeks partial summary judgment as to Debtor's Second, Third, Fourth and Fifth Claims for Relief. The Court will address each claim in turn.

## I.    Debtor's Second Claim for Relief (South Carolina Consumer Protection Code)

In his Second Claim for Relief, Debtor asserts that Auto Credit failed to comply with the South Carolina Consumer Protection Code, S.C. Code Ann. § 37-5-101 *et seq.*, by failing to provide notice of a right to cure to Debtor.

S.C. Code § 37-5-111 provides, in pertinent part, that:

(1) With respect to a secured or unsecured consumer credit transaction payable in two or more installments, except as provided in subsection (2), after a default consisting only of the consumer's failure to make a required payment, a creditor, because of that default, may neither accelerate maturity of the unpaid balance of the obligation, nor take possession of or otherwise enforce a security interest in goods that are collateral until

twenty days after a notice of the consumer's right to cure … is given."

…

(2) With respect to defaults on the same obligation and subject to subsection (1), after a creditor has once given notice of consumer's right to cure …, this section gives the consumer no right to cure and imposes no limitation on the creditor's right to proceed against the consumer or goods that are collateral ….

…

(7) Any repossession of collateral or rented property in violation of this section is void and the creditor is liable for conversion.

According to the Affidavit of Charles Michael Bensch ("Bensch"), a shareholder of Auto Credit, Auto Credit mailed the Notice Letter, which was received by Debtor on or about January 17, 2006. Auto Credit also presented the return receipt for the Notice Letter, which is signed by Debtor and indicates that Debtor received the Notice Letter. Debtor presented no affidavits or other permissible evidence to dispute Auto Credit's factual showing that it provided Debtor with the Notice Letter. As the non-moving party, Debtor may not rest on his pleadings or mere allegations of counsel. In re Dig It, Inc., 129 B.R. 65, 66 (Bankr. D.S.C. 1991). Therefore, the Court finds there is no genuine issue of material fact regarding whether Debtor was provided with the Notice Letter.

Debtor further asserts that Auto Credit repossessed the Vehicle in violation of S.C. Code Ann. § 37-5-111 when the Passtime System disabled the Vehicle on July 4, 2006 and September 1, 2006. After providing Debtor with the Notice Letter on January 27, 2006, Auto Credit was not required to provide Debtor with an additional notice of right to cure letter. See S.C. Code. Ann. § 37-5-111(2). Debtor has not alleged that there was an improper repossession within the twenty day right to cure period following Debtor's receipt of the Notice Letter. Pursuant to § 37-5-111(2), there was no limitation on Auto Credit's right to

6

proceed against its collateral following the expiration of the twenty day right to cure period

other than the limits imposed by the automatic stay under 11 U.S.C. § 362 once Debtor filed

for bankruptcy relief.[5]  Accordingly, the Court finds that there is no genuine issue of material

fact regarding whether Auto Credit complied with S.C. Code § 37-5-111; therefore, Auto

Credit is entitled to summary judgment on Debtor's Second Claim for Relief.

## II.    Debtor's Third Claim for Relief (Common Law Conversion)

In Debtor's Third Claim for Relief, he asserts that a common law conversion took

place when the Passtime System disabled the Vehicle on July 4, 2006 and September 1, 2006.

Debtor seeks damages in the amount of the "fair market value" of the Vehicle.

Under South Carolina law, conversion is defined as "the unauthorized assumption and

exercise of the right of ownership over goods or personal chattels belonging to another, to the

alteration of the condition or the exclusion of the owner's rights." Brannon v. Palmetto Bank,

371 S.C. 357, 364, 638 S.E.2d 105, 109 (Ct. App. 2006)(quoting Crane v. Citicorp Nat'l

Servs., Inc., 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993)).  Although physical possession of the

property is not necessarily required to establish conversion, there is no conversion where there

is no denial or violation of plaintiff's dominion over or rights in the property. Carroll v. M & J

Finance Corp., 233 S.C. 200, 104 S.E.2d 171, 174 (1958).

The parties do not dispute that Debtor was never deprived of physical possession of

the Vehicle by Auto Credit.  Instead, Debtor asserts that Auto Credit deprived him of his

rights in the property by denying him the use of the Vehicle.  Auto Credit presented evidence

showing that Debtor could use the Vehicle even when it had been disabled by entering an

emergency code that would enable the Vehicle to operate for a twenty-four hour period.

---

[5] Because the Court concludes that Debtor was provided with proper notice of his right to cure, the Court does not need to address the issue of whether Auto Credit's alleged use of the Passtime System constituted a "repossession" within the meaning of S.C. Code Ann. § 37-5-111(7).

Specifically, Auto Credit showed that Debtor acknowledged in the Disclosure Statement that he was provided with this emergency code. Again, Debtor presented no affidavits or other permissible evidence to dispute his signed acknowledgment that he received the emergency code at the time of purchase.

Debtor has failed to establish that Auto Credit's use of the Passtime System seriously interfered with his right to use the Vehicle. See <u>Young v. Century Lincoln-Mercury, Inc.</u>, 302 S.C. 320, 330, 396 S.E.2d 105, 111 (Ct. App. 1990)("Conversion is ... properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.")(quoting Restatement (Second) of Torts § 222A, cmt. c (1965)). As Debtor has failed to establish an element essential to his claim for conversion, the Court finds that Auto Credit's motion for summary judgment as to the Third Claim for Relief should be granted.[6]

## III.   Debtor's Fourth Claim for Relief (South Carolina Motor Dealer Act)

In Debtor's Fourth Claim for Relief, Debtor asserts that Auto Credit's use of the Passtime System is an unfair and deceptive act in violation of S.C. Code Ann. §§ 56-15-30 and 56-15-40.   Section 56-15-30(a) declares "unfair methods of competition and unfair or deceptive acts or practices as defined in Section 56-15-40 to be unlawful." Section 56-15-40(1) provides that it shall be deemed a violation of Section 56-15-30(a) for "any ...motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public." Subsection (1) of § 56-15-40

---

[6] The Court also notes that Debtor authorized Auto Credit to disable the Vehicle through the use of the Passtime System if Debtor failed to make a scheduled payment by the due date. In his affidavit, Charles Michael Bensch testified that Debtor executed the Disclosure Statement in his presence and initialed or signed each of the ten specific statements included in the document. Accordingly, it would further appear that Debtor has failed to establish that the interference with his rights was unauthorized.

appears to be the only subsection that applies to this matter.[7]

The undisputed material facts do not indicate that any action between the parties was arbitrary, in bad faith, or unconscionable. Arbitrary conduct has been defined by the South Carolina Supreme Court to include: "acts which are unreasonable, capricious or nonrational; not done according to reason or judgment; depending on will alone." Taylor v. Nix, 307 S.C. 551, 555, 416 S.E.2d 619, 621 (1992). Debtor has presented no evidence that Auto Credit engaged in unreasonable, capricious, or irrational conduct. By signing the Disclosure Statement, Debtor authorized the installation of the Passtime System and the implementation of that system upon certain conditions. The evidence before the Court indicates that Auto Credit simply acted according to the terms of the Disclosure Statement, which were agreed to by Debtor.

"Bad faith" has been defined as "the opposite of good faith, generally implying or involving actual or constructive fraud, or a design to deceive or mislead another, or a neglect or refusal to [fulfill] some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." State v. Griffin, 100 S.C. 331, 333, 84 S.E. 876, 877 (1915) (quoting Black's Law Dictionary). The facts presented by Auto Credit indicate that Debtor was aware of the installation of the system and the circumstances that would cause the Passtime System to disable the Vehicle. Debtor has presented no affidavits or other permissible evidence to show he was misled or deceived by Auto Credit regarding the Passtime System. Debtor has also failed to produce evidence

---

[7] Subsections (2) and (3) are not applicable to motor vehicle dealers and are therefore not applicable to this matter. Subsection (4) concerns three matters, none of which are applicable to the facts of this case: a) requiring the purchase of special features, appliances, equipment, parts or accessories as a condition of the sale or delivery of a new motor vehicle, b) representing and selling a used vehicle as a new motor vehicle, and c) using false or misleading advertisement in connection with his business as a motor vehicle dealer. Subsection (5) concerns the creation of the Office of the Administrator, within the Attorney General's office, and other matters that are not pertinent to this case.

indicating that Auto Credit's use of this system was unconscionable.

For the foregoing reasons, Auto Credit's motion for summary judgment as to the Fourth Claim for Relief should be granted.

## IV.    Debtor's Fifth Claim for Relief (South Carolina Unfair Trade Practices Act)

Debtor's fifth and final claim for relief asserts that Auto Credit's use of the Passtime System, its failure to implement procedures to comply with the automatic stay provisions, and its unlawful repossession of Debtor's Vehicle violate the South Carolina Unfair Trade Practices Act ("UTPA"). Section 39-5-20(a) of UTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." UTPA further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by §39-5-20 may bring an action individually ... to recover damages. S.C. Code Ann. § 39-5-140(a).

In order to bring a cause of action pursuant to UTPA, the plaintiff must demonstrate that (1) the defendant engaged in an unfair or deceptive trade practice, (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unfair or deceptive trade practice had an adverse effect on the public interest. Staley v. Conseco Health Insurance Co. (In re Staley), No. 99-04622, Adv. Pro. No. 99-80383, slip op. at 7-8 (Bankr. D.S.C. July 12, 2000).

Debtor claims that Auto Credit's use of the Passtime System, its failure to implement procedures to comply with the automatic stay provisions, and its unlawful repossession of Debtor's Vehicle are unfair or deceptive trade practices. "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or

oppressive." deBondt v. Carlton Motorcars, Inc., 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct. App. 2000). A deceptive trade practice has been defined as a practice that has a tendency to deceive. Id. In order to determine whether an act or practice is unfair or deceptive within the meaning of UTPA, the Court must examine the surrounding facts and the impact of the transaction on the marketplace. See id.

The Court finds that Debtor has failed to present evidence demonstrating that Auto Credit's conduct was unfair or deceptive. The only evidence presented indicates that Debtor was aware of the use of the Passtime System in his Vehicle and authorized the installation of the system. No evidence has been presented that demonstrates that the use of the Passtime System is offensive to public policy or immoral, unethical or oppressive. Further, there is no evidence that the Vehicle ever left Debtor's possession, thus Debtor's unlawful repossession claim is without merit.

Even if the facts in evidence were sufficient to demonstrate that Auto Credit's conduct constituted an unfair trade practice, Debtor cannot maintain a cause of action under UTPA because he has failed to present any evidence of actual damages suffered on account of Auto Credit's conduct. Debtor stated that he was at home when the Vehicle was disabled and has not alleged that the Vehicle's failure to operate caused him any harm. Because Debtor has failed to establish the essential element of damages for his UTPA claim, the Court finds that Auto Credit's motion for summary judgment as to the Fifth Claim for Relief should be granted.

11

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment to Auto Credit on Debtor's Second, Third, Fourth, and Fifth Claims for Relief.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
April 27, 2007

12